KELLY, by guardian *ad litem,* Respondent, vs. SOUTHERN WISCONSIN RAILWAY COMPANY, Appellant.

*January 9—February 18, 1913.*

*Negligence: Street railways: Stringing of wire in street: Injury to child: Dangerous method of doing work: Custom: Failure to guard appliances: Trespassers: Contributory negligence: Evidence: Appeal: Harmless errors.*

1. In an action against a street railway company for an injury to a child six years old, alleged to have been caused by defendant's failure to guard against children playing or interfering with a rope and pulley by means of which a feed wire was being strung in a street, it is not a sufficient defense that the appliances used were proper, that the work was done in the usual way, that due care was exercised to avoid interfering with public travel, and that no accident had previously occurred.

2. One who maintains in a place where children of tender years have a right to be an object or condition which he knows or ought to know is likely to attract them to interfere therewith to their peril, owes a duty of ordinary care to prevent injury to such children.

3. *It seems* that the same rule would apply where the attraction is upon private premises, even though the children in going there become trespassers.

4. Neither the fact that a child is using the public street as a playground, nor the fact that it is a trespasser in interfering with a rope and pulley there in use, absolves the owner of such appliances from his duty of ordinary care for the safety of such child.

5. When the method of doing work is obviously dangerous, in that no precautions are taken for the safety of children playing in the street where they may be allured into danger created by the operation, it is not a proper method merely because it is the customary one.

6. A child may be technically a trespasser in doing the act which results in his injury, and yet be in the exercise of the care which is reasonably to be expected of children of his age under the same or similar circumstances.

7. In an action for personal injuries to a minor, the pecuniary circumstances of plaintiff's father are immaterial, but the erroneous admission of evidence on that subject will not work a reversal where it does not clearly appear that without it the result might probably have been more favorable to appellant.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action to recover for a personal injury. All conditions precedent to the right to maintain the action and to legal capacity to sue were pleaded and established by proof.

Plaintiff was an infant of the age of six years. July 27, 1911, defendant, a street railway corporation, was lawfully engaged in stringing an electric feed wire on a city street where children, to its knowledge, were liable to be. A snatch block and rope were used with a team of horses to furnish power. The snatch-block pulley was inclosed so far as practicable. It was attached to a pole in the line the wire was to be stretched, some eighteen inches from the ground. The mode of operation was to attach one end of a long rope

to the wire to be placed in position, the other end of the rope being attached to the draft bar to which the team was hitched after such rope had been properly threaded through the snatch block.    The feed wire was wound on a spool, the loose end being the one attached to the rope which extended over cross-arms on poles some distance to the snatch block, then in due course to the draft bar.    The spool was located some 700 feet from the pulley.    Two men were stationed at the spool, another drove the team, and one man was stationed at the street crossing.    The team, at the start, was near the pulley and as operations progressed, approached the spool.    There was no guard stationed at the pulley or to watch out for children who might interfere with the rope during the progress of the work.    The accident happened some 300 feet from plaintiff's home.    The plaintiff was not familiar with the appliance.    The particular day was the first of the operations.    Large numbers of children were accustomed to congregate in the street to play.    While the boy was amusing himself with the rope near the snatch block, the team was started whereby his hand was drawn into the pulley and severely injured.    The contrivance was liable to attract young children who might be playing in the street and cause them to take hold of the rope and defendant knew, or ought to have known, children were liable to be in the vicinity of the pulley while the work was in progress.

The pleadings formed issues rendering admissible evidence as to all the matters suggested, and there was evidence as to each such matter, either direct or indirect.    At the close thereof there was a motion for a directed verdict which was denied.    The jury found, specially, (1st) defendant ought, in the exercise of ordinary care, to have known that the rope was calculated to attract children to play therewith; (2d) the pulley was not of the kind customarily used by ordinary careful persons; (3d) defendant did not conduct the operations as such work is ordinarily done; (4th) defendant failed

to exercise ordinary care in the manner and place the pulley was attached to the pole, likewise in conducting the operations without any watchman to guard against persons being injured at the pulley; (5th) defendant's want of ordinary care was the proximate cause of the injury; (6th) plaintiff was not guilty of any want of ordinary care, neither were his parents so guilty; (7th) it will take $2,000 to compensate plaintiff for his loss.

On such verdict judgment was rendered for plaintiff, numerous exceptions being saved for consideration on appeal.

For the appellant there was a brief by *Jones & Schubring,* and oral argument by *B. W. Jones* and *E. J. Schubring.* They contended, *inter alia,* that no inference of negligence can arise from defendant's doing the work in the customary way. *Bandekow v. C., B. & Q. R. Co.* 136 Wis. 341, 117 N. W. 812; *Prybilski v. Northwestern C. Co.* 98 Wis. 413, 74 N. W. 117; *Boyce v. Wilbur L. Co.* 119 Wis. 642, 97 N. W. 563; *Yazdzewski v. Barker,* 131 Wis. 494, 111 N. W. 689; *West v. Bayfield M. Co.* 144 Wis. 106, 128 N. W. 992; *Doyle v. La Crosse City R. Co.* 148 Wis. 280, 134 N. W. 364; *Innes v. Milwaukee,* 96 Wis. 170, 70 N. W. 1064; *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671. The plaintiff upon the evidence was clearly guilty of contributory negligence. *Ryan v. La Crosse City R. Co.* 108 Wis. 122, 83 N. W. 770; *Wills v. Ashland L., P. & S. R. Co.* 108 Wis. 255, 84 N. W. 998; *Secard v. Rhinelander L. Co.* 147 Wis. 614, 133 N. W. 45; *Brinilson v. C. & N. W. R. Co.* 144 Wis. 614, 129 N. W. 664; *Tishacek v. Milwaukee E. R. & L. Co.* 110 Wis. 417, 85 N. W. 971; *Hayes v. Norcross,* 162 Mass. 546, 39 N. E. 282; *Indianapolis T. & T. Co. v. Croly* (Ind.) 96 N. E. 973. Plaintiff was a trespasser and for that reason cannot recover. *Friedman v. Snare & Triest Co.* 71 N. J. Law, 605, 61 Atl. 401; *Fitzgerald v. Rodgers,* 55 App. Div. 298, 68 N. Y. Supp. 946; *Conlon v. Bailey,* 58 Ill. App. 261; *Jefferson v. Birming-*

*ham R. & E. Co.* 116 Ala. 294, 22 South. 546, 38 L. R. A. 458; *Thompson v. Cumberland T. & T. Co.* 138 Ky. 109, 127 S. W. 531; *Holbrook v. Aldrich,* 168 Mass. 15, 46 N. E. 115; *Gay v. Essex E. S. R. Co.* 159 Mass. 238, 34 N. E. 186; *Briese v. Maechtle,* 146 Wis. 89, 130 N. W. 893.

For the respondent there was a brief by *Aylward, Davies, Olbrich & Hill,* and oral argument by *M. B. Olbrich.* They cited, among other cases, *Douglas v. C., M. & St. P. R. Co.* 100 Wis. 405, 76 N. W. 356; *Larson v. Tobin,* 43 Minn. 88, 44 N. W. 1078; *Kelley v. Parker-Washington Co.* 107 Mo. App. 490, 81 S. W. 631; *Busse v. Rogers,* 120 Wis. 443, 98 N. W. 219; *Meibus v. Dodge,* 38 Wis. 300; *Compty v. Starke D. & D. Co.* 129 Wis. 622, 109 N. W. 650; *O'Leary v. Michigan State T. Co.* 146 Mich. 243, 109 N. W. 434; *Spengler v. Williams,* 67 Miss. 1, 6 South. 613; *Powers v. Harlow,* 53 Mich. 507, 19 N. W. 257; *Iamurri v. Saginaw City G. Co.* 148 Mich. 27, 111 N. W. 884; *Lynch v. Nurdin,* 1 Q. B. 29; *Earl v. Crouch,* 57 Hun, 586, 10 N. Y. Supp. 882, affirmed 131 N. Y. 613, 30 N. E. 864; *Jonasch v. Standard G. L. Co.* 4 N. Y. Supp. 542; *Thompson v. B. & O. R. Co.* 218 Pa. St. 444, 67 Atl. 768, 19 L. R. A. 1162, 1173; *Edgington v. Burlington, C. R. & N. R. Co.* 116 Iowa, 410, 90 N. W. 95; *Westerfield v. Levis Bros.* 43 La. Ann. 63, 9 South. 52; *Harper v. Kopp* (Ky.) 73 S. W. 1127.

Marshall, J. Did defendant breach a duty to exercise ordinary care for the safety of children who were liable to be in the street in the vicinity of its rope; having regard for danger of their interfering with the appliance?

The trial court, in contemplation of supposed legal principles, decided there was reasonable ground in the evidence to find in respondent's favor, and, so, sent the matter to the jury. Acting under the judicial suggestion, the jury took the subject as involving questions of fact, determinable from controverted reasonable inferences arising from the evidence,

and resolved the uncertainty in favor of respondent. The
result was challenged as contrary to the evidence, on the mo-
tion for a new trial, and the decision was against appellant.
So the error now assigned, that there is no reasonable support
in the evidence for the verdict, is opposed by the judgment
of the jury and that of the trial court both before and after
verdict. For success thereof a strong case is required,—
much stronger than is presented here if the law applicable
thereto is as the trial judge supposed. The force of the ar-
gument of counsel for appellant is substantially all directed
from an angle far different, from a legal standpoint, than
the one from which the court below observed the situation.
If the latter be right, the judgment must be affirmed. If
the former be right, it must be reversed.

Counsel ground their faith, in the main, upon want of
duty to respondent,—that appellant followed the custom as
to the kind of appliance, and, therefore, as matter of course,
there was no failure to exercise ordinary care. Does that
satisfy the situation? The difficulty is in the evidence, sub-
stantially, stopping with the one circumstance that the ap-
pliance was the usual one and that no accident had previously
occurred. This, by the foreman, is a fair sample: The
method of stringing the wire was the same I have used for
years. Other companies string the same way,—the same
kind of a pulley with a rope and team being used. The tele-
phone companies use the same kind of a contrivance. We
had one man at the street crossing to give signals to men at
the spool and one driving the team. The man at the crossing
had to watch the snatch block and the feeder as it came along
because of teams and people walking back and forth across
the street. I have never known of children playing with the
rope or of any accident. There was no watching to keep
children away from the pulley and rope. The man at the
crossing was to see that teams had opportunity to pass and
watch everything, and guard to see that everything was all

right and that that no one was near the line where it came near the ground.    The men did not have any instructions to keep children away from the rope.

That may all be.    It makes a pretty clear case as regards danger to persons using the appliance; but the complaint is not of the character of the appliance or the means or manner of its location, but of no efficient attention being paid to keeping children from interfering with the rope near the pulley, notwithstanding it was dangerous to do so, and the location and circumstances were such that defendant's employees were chargeable with knowledge that children were liable to be lawfully in the street in the zone of danger and be attracted into it.    It was one thing to use a proper appliance and to see that it operated right as regards the work being done and to see that, when the rope interfered with travel at the street crossing, teams and pedestrians were permitted to pass.    It was quite another thing to exercise efficient care to guard against children being injured by interfering with the rope and pulley at the point of danger, some hundreds of feet from the spool and the man at the street crossing, in view of the fact, if it be a fact, that appellant had reasonable ground to apprehend that such care was necessary.    Failure in that field is the real ground of negligence pleaded and to which the evidence on the part of respondent was directed, and which was submitted to the jury.    Thus we see the evidence appellant's counsel relies upon does not reach the real situation.    The manner employed, from a mechanical standpoint, in doing the work may have been all right, but how about the means employed to guard against children lawfully in the street being injured in the progress of the work?    That is the question, if we pass the point in favor of respondent as to whether, in the exercise of ordinary care, such means were required, and on that question the direct evidence on the part of appellant is silent, except in the statement of the foreman that he had never known of an accident happening by reason

of children playing with the rope. The defense seems to
have been upon the theory that appellant had a right to be in
the street with a proper appliance for doing its work, prop-
erly operated as regards public travel, and that it had no
duty to perform as regards children, who, being lawfully in
the street for its ordinary use, might step aside and interfere
with the rope, as was done in this case. No one was in-
structed to look after that matter. The jury were warranted
in believing that such matter was not thought to be any con-
cern of appellant's. Counsel argue the case here from that
standpoint. Is that consistent with the true measure of what
appellant's duty was under the circumstances? If not, then
the whole theory of the defense at this point fails.

In the further consideration of the case, we may safely
say, without demonstrating it by quotations from the evi-
dence, there was reasonable ground to conclude that appel-
lant's operations were in a locality where children were liable
to lawfully be at any time,—children so young as not to be
able to appreciate the danger of interfering with the moving
rope in the immediate vicinity of the pulley; that such dan-
ger, in fact, existed and that such interferences were within
reasonable probabilities. The fact that no accident had pre-
viously occurred, so far as defendant knew, is not conclusive.
That young children are very liable to meddle with things as
plaintiff did, is of common knowledge. That in doing so
there is probability of injury, needs no evidence from the
mouths of witnesses.

If appellant did not owe any duty to children in the cir-
cumstances here; if they, though too young to appreciate the
danger and the wrong of their trifling with the ropes, were
entirely at their own risk of loss by doing so, then the whole
theory of respondent's case is wrong. Many cases are cited
to our attention as bearing on the question; but, all go either
upon the theory that defendant did not owe any duty to the
injured person under any circumstances, or that the opera-

tions or conditions causing the injury were not dangerous, or, if dangerous, in case of interference therewith by children, that the apparatus was not such as would, naturally, allure children to play with it. Such cited adjudications of the first class are out of harmony with and contrary to established principles, as frequently applied in this court, and need not be referred to. The logic of the other authorities relied upon is well illustrated by *Fitzgerald v. Rodgers,* 58 App. Div. 298, 68 N. Y. Supp. 946, quoted from at length by counsel for appellant, where it was held that there was no liability because the machine was not dangerous in itself. It did not of itself constitute an unlawful obstruction in the highway. It was not of such character that it was dangerous and a temptation or enticement to children to play with it with probability of receiving personal injuries. But the two elements said to be absent in that case and so to relieve the defendant from the charge of liability, are claimed to have been present in this case and were so found to be by the jury, confirmed by the circuit judge.

Mere cases do not create principles. They apply principles to situations fairly within them. Courts do not often differ as regards principles, but do as regards what particular circumstances are essential to render them applicable. In that lies the danger of tying too closely to cases instead of using them, merely, by way of illustration. One may take the former method, descending to the details of discussion in opinions, and easily go astray, or fall into confusion, while, by taking the latter, the mists will disappear.

The principle involved here, so far as the precise facts go, keeping prominent that the child was where it had a right to be,—the principle recognized in most of the authorities cited to our attention and illustrated time and again in our own decisions,—is this: He who maintains an object or condition liable to attract children of tender years to interfere therewith, under such circumstances as to be chargeable with

knowledge that they may probably so interfere, to their personal injury, breaches his duty as to ordinary care not to imperil their safety.

Keeping the principle in mind, one can easily see that customary violation of duty is no defense in any particular instance. Numerous authorities are to the effect that places do not, necessarily, fall outside the principle because of the children in going there becoming trespassers. By common knowledge very young children are liable to trespass and be wholly ignorant of wrongdoing, or substantially so. Is there not a duty owing to such children as to such situations,—a duty, even within the broad lines of the principle stated,— though they be wrongdoers, which may be actionably breached, and especially so in case of their being where they have a right to be, as in this case? The common instincts of mankind suggest that. Sound policy would seem to demand it and the courts in general, and this court in particular as to situations analogous to the one in hand, uphold it.

Conservation of child life and safety as to artificial perils, is one of such importance that ordinary care may well hold every one responsible for creating or maintaining a condition involving any such, with reasonable ground for apprehending that children of tender years may probably be allured thereinto. In many courts that has been applied generally,— to private premises where children have no right to be and to public places and those visited by license, as well,—while other courts restrict it to the rightful visitations. This court, perhaps, has not taken a decided stand on the broad lines indicated, though the writer is of the opinion that it has, in logical effect, and would assert it and defend it as sound doctrine, demanded by precedent, principle, and humanity. One of the most striking illustrations of such broad application in foreign jurisdictions is *Birge v. Gardner,* 19 Conn. 507. A person, insecurely, set a gate on his own premises beside a lane through which children were liable to pass.

One while doing so, took hold of and shook the gate, causing it to fall and break his leg. Such person was held liable. *Bransom's Adm'r v. Labrot,* 81 Ky. 638, is another. In the latter these were the facts: A person piled lumber on his unfenced lot so timbers were liable to fall and injure any one within range. He had reasonable ground for knowing children might play in the vicinity. That occurred. A timber fell causing a child's death. The owner was held liable.

There are numerous instances where the principle under discussion was applied, that one must, in the exercise of ordinary care, be sensible of common childish instincts and not create or maintain, even on his own premises, a condition which he knows, or has reasonable ground to apprehend, may, probably, allure innocents into danger, notwithstanding one would, technically, trespass in reaching the peril. As indicated, whether that should be applied generally, or only to premises where children may rightfully be, is where courts have divided. The following cases indicate the trend in this court: *Busse v. Rogers,* 120 Wis. 443, 98 N. W. 219; *Compty v. C. H. Starke D. & D. Co.* 129 Wis. 622, 109 N. W. 650; *Lomoe v. Superior W., L. & P. Co.* 147 Wis. 5, 132 N. W. 623; *Secard v. Rhinelander L. Co.* 147 Wis. 614, 133 N. W. 45; *Meyer v. Menominee & M. L. & T. Co.* 151 Wis. 279, 138 N. W. 1008. The conflict of authority I have indicated was referred to in *Busse v. Rogers,* but the court contented itself with applying the principle to such situations as the one in hand, not expressing doubt, however, as to whether it might be applied more broadly.

It should be particularly noted that the fact of the child using the street as a playground was not thought to remove it from the zone of duty as regards its personal safety. Children have, as it is said, a subservient right to play in the street and their safety in doing so must not be imperiled by any act of a person which he has reasonable ground to expect may probably do so, even though the danger be only rendered

active through infantile curiosity or instinct for play,—a stepping aside from the primary use of the way and thus arousing the dormant danger, as in *Secard v. Rhinelander L. Co., supra,* where the child while playing with an excavation lawfully made in the street, by caving of the earth was killed.

We need not pursue the subject above discussed further. The main contentions that defendant was not negligent because it was lawfully in the street, using the ordinary appliances in doing its work, and that respondent trespassed upon its property in taking hold of the rope, are unsound. They do not recognize the principle regarding the duty to children of tender years, nor that infantile transgressions under such circumstances as we have here, do not make a child an outlaw without the protection which the humanity of the law commonly throws around child life.

The jury found all the facts in respondent's favor essential to liability under the principles of legal responsibility indicated. Looking at the circumstantial as well as the direct evidence, we are unable, under the rule as to the weight of a jury finding, confirmed by the trial judge, to say that there was no legitimate basis for sending the questions respecting the facts to the jury. So there stand these verities: Appellant created a condition liable to cause personal injury to children of tender years, if they interfered with the rope, as plaintiff did. It knew children were liable, at any time, to be within reach of the danger. It had reasonable ground to suppose that the moving rope would allure such children into playing with the rope and so enter the zone of danger. It gave no directions to its employees, and they did not exercise any oversight, in respect to the matter. As before suggested, if it be true that the safety of children is customarily unthought of, as in this case, in the same or similar circumstances, and it is considered the evidence hardly goes that far, especially, not conclusively, then such work under such cir-

cumstances is customarily done without proper regard for
young children who are liable to be lawfully playing in the
street. The way a thing is customarily done is evidence on
the question of whether ordinary care was used in a particu-
lar instance and may be conclusive, but when such manner is
obviously dangerous, as by wholly neglecting to give thought
for the safety of children, playing in the street where they
may be allured into danger created by an outside agency, as
in this case, it is not a proper one merely because it is a cus-
tomary method. *Douglas v. C., M. & St. P. R. Co.* 100 Wis.
405, 76 N. W. 356; *Innes v. Milwaukee,* 96 Wis. 170, 70
N. W. 1064; *Jensen v. Wis. Cent. R. Co.* 145 Wis. 326, 128
N. W. 982.

What has been said efficiently answers the contention that
respondent was guilty of contributory negligence, since the
mere fact that plaintiff violated the rights of appellant by
meddling with the rope did not render him necessarily, effi-
ciently a trespasser. A child might be technically such, as we
have seen, and yet be in the exercise of the care reasonably to
be expected of children of his age under the same or similar
circumstances. On the whole, we are unable to come to the
conclusion that the trial court was wrong in submitting the
matter to the jury.

Complaint is made because the court permitted respond-
ent's counsel to interrogate plaintiff's father with reference
to his pecuniary circumstances. The only excuse for that
seems to be that appellant's counsel first opened up the sub-
ject without the questions being objected to. When that was
followed by questions on the part of respondent's counsel
which were objected to the objection should have been
promptly sustained. The pecuniary circumstances of plaint-
iff's father had nothing to do with the loss he sustained by
reason of appellant's fault. The admission over objection of
such evidence has often been held error, but said to be one
of minor character, affecting, if at all, only the measure of

damages. *Holdridge v. Mendenhall,* 108 Wis. 1, 83 N. W. 1109. Under the circumstances of this case it does not clearly appear that had the erroneous ruling not occurred the result might probably have been more favorable to appellant, therefore, it must be regarded as nonprejudicial.

There is nothing further in the case which seems to merit special attention. The case has been carefully, it is thought, considered in all its aspects without discovering any warrant for disturbing the judgment.

*By the Court.*—Judgment affirmed.