EMOND and wife, Appellants, vs. KIMBERLY-CLARK COMPANY, Respondent.

*November 18—December 8, 1914.*

*Negligence: Pleading: Conclusion of fact: Ponds on private grounds: Danger to children: Duty to fence.*

1. To allege in a complaint that a thing is unsafe without specifying how or why it is unsafe, is to state a mere conclusion and is not sufficient.
2. As to trespassers, useful or lawful structures or objects upon one's own land may, in the absence of active negligence at the time of the injury, be maintained and used in the customary manner in which they have been in the past, provided such maintenance and use is not so obviously dangerous as to partake of the nature of gross negligence.
3. In the absence of special danger or peculiar circumstances there is no breach of duty to the public in leaving unfenced a pond of water located on private property; and the attractiveness of the water or its nearness to a public highway does not take it out of the rule unless it is so located as to endanger the safety of children or other persons using the highway.
4. So *held* as to an artificial pond, one end of which adjoined a highway while from the other end, about forty feet away, the water flowed over a gate in a dam in a way alleged to have been peculiarly attractive to children,—the action being for death of a child who fell from the dam and was drowned.

·Appeal from a judgment of the circuit court for Winnebago county: Geo. W. Burnell, Circuit Judge. *Affirmed.*

Action to recover damages for the death of the minor son of plaintiffs. Defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. Its material allegations are as follows:

"That on the 17th day of December, 1913, and for a long time prior thereto, said defendant was engaged in the paper-manufacturing business, and had one of its principal plants. located in the village of Niagara, Marinette county, Wisconsin. That the defendant company, for the purpose of obtaining water for fire protection, had constructed a dam in close proximity to the main street in the village of Niagara, upon land owned and occupied by said defendant, and had thus caused a pond or pool about 30 x 40 feet to be formed, one end of which adjoined said main street of the village of Niagara, which was a public highway; that the said defendant had located in and as part of said dam, a certain overflow gate over which the water flowed in such a manner as to be peculiarly attractive and alluring to children of tender age; that said overflow gate was so constructed, located and of such a nature as to be particularly dangerous and hazardous to children of tender years, attracted and allured on said dam by said water falling over said gate; that said dam was located near the main street of said village and easily discernible and accessible to children passing along said main street; that the water on the pond side of the overflow gate was deep and roily.

"That there were at all times hereinafter mentioned, and for a long time prior thereto, many families having children of tender age, living in the vicinity of said pond, and that the children of said families were accustomed to pass, repass and play along said pond, and upon said dam and overflow gate; that they were in the habit of throwing sticks in said pond and watching them go over the overflow gate; that the public had used the top of said dam and overflow gate as a path or short-cut from the main street to the lumber piles, and that numerous children had fallen into said pond while playing upon said dam and overflow gate, all of which facts this defendant well knew; that the defendant owed to the children upon said lot and dam as aforesaid, the duty of using reason-

able care, skill and diligence to prevent said children from going upon said dam and overflow gate, and to properly fence, guard and barricade said pond, and to properly guard said dam and overflow gate, and to repair and keep said overflow gate and dam in reasonably safe condition.    That nevertheless the defendant wholly failed to use due care, skill and diligence to prevent the children from falling into said pond; that it wholly failed to fence, barricade and guard said pond, dam and overflow gate, and allowed it to remain in an unsafe condition.

"That on or about the 17th day of December, 1913, Austin Emond, the four-year-old son of *George* and *Ida Emond,* plaintiffs herein, while on said dam, in pursuance to the implied invitation of this defendant, and allured there by the attractiveness of said overflow gate, pond and waterfall and solely because of the negligence of said defendant hereinbefore mentioned in failing to guard said pond and overflow gate, in failing to use due care to prevent children from falling into said pond, and in allowing said overflow gate and dam to be in an unsafe condition, said Austin Emond was precipitated into said pond and was drowned.

"That in consequence of the premises the above entitled plaintiffs have lost the services and support of their child, which they would have received but for the negligence of this defendant, to their damage in the sum of seven thousand five hundred dollars ($7,500)."

Plaintiffs appealed from a judgment sustaining the demurrer.

For the appellants there was a brief by *Martin, Martin & Martin* and *G. F. Clifford,* and oral argument by *Mr. Clifford.* They contended, *inter alia,* that the fact that part of the pond extended to the side of the highway created the duty of fencing the pond.    *Klix v. Nieman,* 68 Wis. 271, 32 N. W. 223; *Meibus v. Dodge,* 38 Wis. 300; *Busse v. Rogers,* 120 Wis. 443, 98 N. W. 219; *Compty v. C. H. Starke D. & D. Co.* 129 Wis. 622, 109 N. W. 650; *Meyer v. Menominee & M. L. & T. Co.* 151 Wis. 279, 138 N. W. 1008; *Lomoe v. Superior W., L. & P. Co.* 147 Wis. 5, 132 N. W. 623; *Kelly v. Southern Wis. R. Co.* 152 Wis. 328, 140 N. W. 60; *Harris v. East-*

*ern Wis. R. & L. Co.* 152 Wis. 627, 140 N. W. 288. For cases generally on the liability of children falling into a pool on private property, see *Pekin v. McMahon,* 154 Ill. 141, 39 N. E. 484; *Price v. Atchison W. Co.* 58 Kan. 551, 50 Pac. 450, 62 Am. St. Rep. 625; *Brinkley C. Co. v. Cooper,* 60 Ark. 545, 31 S. W. 154, 46 Am. St. Rep. 216; *Franks v. Southern C. O. Co.* 78 S. C. 10, 58 S. E. 960, 12 L. R. A. N. S. 468; *Donk Bros. C. & C. Co. v. Leavitt,* 109 Ill. App. 385; *Tucker v. Draper,* 62 Neb. 66, 86 N. W. 917; *Brown v. Salt Lake City,* 33 Utah, 222, 93 Pac. 570.

For the respondent there was a brief by *Hooper & Hooper,* and oral argument by *Moses Hooper.*

VINJE, J.    The appeal presents the question of whether or not it was the duty of the defendant to fence the pond described in the complaint.    Fairly construed the failure to fence or guard it is the only negligence alleged.    Upon the oral argument it was claimed by plaintiffs' counsel that the allegation that the pond, dam, and overflow gate were allowed to remain in an unsafe condition was the assertion of a breach of duty additional to the duty to fence or guard.    If such a meaning can be gathered from the allegation it adds nothing to the complaint, for in the absence of an averment stating in what such unsafety consisted it is but the allegation of a conclusion to be drawn from facts.    To allege that a thing is unsafe without specifying how or why it is unsafe is tantamount to an allegation that a person is negligent without stating the facts constituting the negligence.    It is for the pleader to state the facts showing a want of safety or negligence, and it is for the court or jury to draw the conclusion that a thing is safe or unsafe or a person is negligent or not from the facts pleaded or in evidence.    The facts upon which the negligence or unsafe condition are predicated should be pleaded and not the conclusion to be drawn therefrom.    So we are limited to a consideration of the facts averred, namely, the failure to fence, in passing upon the sufficiency of the complaint.

Stripped of verbiage describing the attractiveness of the pond to children, we have a body of water forty feet long and thirty feet wide situated upon defendant's land, with one end adjacent to a highway and the other end remote from the highway containing the dam and overflow gate or spill. There is nothing peculiar either in size, construction, or location of the pond. Hundreds of bodies of water both larger and smaller and equally attractive dot the whole state. And they take their toll of human life, especially of children, both in winter and summer. But it has not yet been deemed to be the duty of the owners thereof to fence or barricade them so as to exclude the public therefrom. Bodies of water like the one in question either natural or constructed by a dam or otherwise are useful and lawful objects whether located wholly within private lands or adjacent to a highway. Their usefulness would often be seriously interfered with if not entirely destroyed by a fence; especially so of ponds located on farms where they furnish water for stock. Generally speaking it is true, as stated in defendant's brief, that every drop of water except that in the washbowl is attractive to children, and it is also true that all bodies of water deep enough to drown a child and situated within roving distance of children present a danger from which an injury to some person or death may reasonably be anticipated. But it does not follow from such fact that a duty on the part of the owner to fence or guard springs therefrom. There are many useful, lawful structures and objects of which the same is true. One having a grove of trees, especially be they nut-bearing trees, may reasonably anticipate that a boy may climb one and be injured. Such occurrences are by no means rare. But would any one claim that he must fence or guard his trees lest an injury to a child might result? The difference between an attractive lawful object and an attractive nuisance must not be overlooked.

A certain amount of danger apparent to the mature mind inheres in the very existence of many useful objects both nat-

ural and artificial that surround our daily life. When the risk resulting from their use or existence is no greater than is reasonably necessary for their proper enjoyment by the owner, it is one we must assume as a condition of living. All efforts to minimize danger are commendable. But in so far as they are compulsory they must remain within the realm of what is fairly reasonable, and that is especially true of duties owing to trespassers. As to them, useful or lawful structures or objects upon one's own land may in the absence of active negligence at the time of the injury be maintained and used in the customary manner in which they have been in the past, provided such maintenance and use is not so obviously dangerous as to partake of the nature of gross negligence. *Zartner v. George,* 156 Wis. 131, 145 N. W. 971.

The world cannot be made danger-proof—especially to children. To require all natural or artificial streams or ponds so located as to endanger the safety of children to be fenced or guarded would in the ordinary settled community practically include all streams and ponds—be they in public parks or upon private soil,—for children are self-constituted licensees if not trespassers everywhere. And to construct a boy-proof fence at a reasonable cost would tax the inventive genius of an Edison. Heretofore it has been the judgment of this court that, in the absence of special danger or peculiar circumstances, there is no breach of duty to the public in leaving unfenced a pond of water located on private property. The attractiveness of the water or its nearness to a public highway does not take it out of the rule. *Klix v. Nieman,* 68 Wis. 271, 32 N. W. 223. The conclusion reached in that case is adhered to. It is alleged that the boy fell in while on the dam. So he had left the highway and traveled some forty feet before he fell into the water. Were the pond so located as to endanger the safety of children using the highway as were the block and tackle in *Kelly v. Southern Wis. R. Co.* 152 Wis. 328, 140 N. W. 60; or were it a hidden death-deal-

ing trap like the electric wires in *Meyer v. Menominee & M. L. & T. Co.* 151 Wis. 279, 138 N. W. 1008; or an obscured pitfall in a licensed pathway as in *Brinilson v. C. & N. W. R. Co.* 144 Wis. 614, 129 N. W. 664, a different rule would apply. Here we have nothing but a body of water in an ordinary state, such as it is often left in by nature, and, though attractive to children, there was no duty to fence it. The demurrer was properly sustained.

*By the Court.*—Judgment affirmed.

KERWIN, J., took no part.

