## FRABUTT v. NEW YORK, C. & ST. L. R. CO.

### Civ. No. 114.

United States District Court
W. D. Pennsylvania.
Feb. 8, 1950.

See, also, D.C., 84 F.Supp. 460.

824

---

Edward E. Petrillo, Erie, Pa., for Plaintiff.

Frank B. Quinn, of Quinn, Leemhuis, Plate & Dwyer, Erie, Pa., for Defendant.

GOURLEY, District Judge.

This action is instituted by the Administrator of the Estate of Berardino Campagna in behalf of the widow and children of the deceased under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

The Court left for the determination of the jury whether the defendant had complied with its duty under the Federal Employers' Liability Act to use reasonable care and in providing its employees with a safe place to work, and the pecuniary loss sustained by the widow.

Interrogatories were submitted relative to negligence of the defendant, contributory negligence of the deceased, and the pecuniary loss suffered by the widow. The jury found 50% negligence and 50% contributory negligence, and returned a verdict in favor of the Administrator in behalf of the widow for $1500.

The matter before the court relates to the defendant's motion to set aside the verdict or for judgment notwithstanding the verdict under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

As a basis for the motion two contentions are made:

(1) That evidence of defendant's negligence was not sufficient to take the case to the jury.

(2) That the deceased was guilty of contributory negligence as a matter of law, which would completely bar the right of the administrator to recover.

The issues thus presented require a statement concerning the manner in which the deceased met his death while in the employment of the defendant.

The operations of the defendant and the tracks which were used incident thereto were either owned or under the immediate supervision and control of the defendant.

On December 31, 1942 and for many years prior thereto the deceased had been employed by the defendant as a trackman. The duties of the deceased in the capacity of a trackman included the cleaning of switches, side tracks and other tracks of the defendant. The tracks of the defendant run in an easterly and westerly direciton. One of the tracks was used for through traffic, and the side track, which was adjoining to the main track, was used for meeting and passing of trains and to make up trains. In connection therewith there were many spur tracks that led into various industries. As a result of weather conditions, the deceased had been assigned to clean various switches which had been covered by snow, and he was engaged in the act of cleaning a switch that led off the side track into a spur track at the time he met his death. The defendant had engaged in a shifting operation some 2500 feet west of where the accident occurred. There were six loaded cars that were to be attached to a number of cars that were located approximately 100 feet east of the place where the deceased was engaged in the cleaning of a switch. The cars were being pushed by an engine and detached therefrom and permitted to proceed on their own momentum for a distance of 2500 feet at a speed of ten to fifteen miles an hour. Switching operations were not continuous during any one day. The physical structure of the railroad at the place of the accident was such that it could not be considered in the same category as a "yard" is commonly understood in railroad parlance. During the period that the cars were traveling the 2500 feet on the side track, two freight trains passed on the main track in a westerly direction. The cars were traveling in an easterly direction. The deceased was struck by the cars as they passed the switch. His body was found ninety feet east of the switch after the two series of cars had been coupled.

The plaintiff contends that the defendant was negligent in the following respects:

(1) That the defendant's employees engaged in the operation of the switch-engine failed to determine whether the side track was clear before switching the six freight cars.

(2) That the crew of the switch-engine was negligent in attempting to switch said cars by means of letting them run free onto the said side track without any brakeman thereon to set the brakes and without having said cut of cars coupled to an engine and without having the air coupled in so far as to control the brakes.

(3) That the crew of said work train was negligent in failing to post a watchman or flagman on said side track while the said switching operation was taking place.

(4) That no warning or signal was given to the said decedent to warn him of the approach of said cut of cars.

(5) That the defendant failed and neglected to comply with its safety rules and as a result thereof under all the facts and circumstances the failure so to do establishes negligence on the part of the defendant.

A motion for new trial has not been filed, and counsel for defendant states the defendant is not interested in a new trial.

It is desirable for a district judge not to direct a verdict at the close of evidence but to reserve decision on any motion therefor and allow the jury to bring in a verdict. The district judge may then, if he thinks the verdict improper, set aside the verdict as against the weight of the evidence and grant the motion. Such action avoids the waste and expense of another trial if it is determined that the action of the trial judge is improper since if the motion is granted, the appellate court can then order that the verdict be reinstated. Fratta v. Grace Line, Inc., 2 Cir., 139 F.2d 743.

A motion for a directed verdict or judgment notwithstanding the verdict under the Federal Rules raises a question of law only; that is whether there is any evidence which, if believed, would authorize a verdict against the defendant and the trial court in considering such motion does not exercise any discretion but makes only a ruling of law. Marsh v. Illinois Central R. Co., 5 Cir., 175 F.2d 498; Grayson v. Deal et al., D.C., 85 F.Supp. 431.

In passing upon a motion to set aside a verdict for plaintiff and to enter judgment for the defendant, evidence including all reasonable inferences to be drawn therefrom must be taken in the light most favorable to the plaintiff and all conflicts must be resolved in his favor. Waggaman v. General Finance Co. of Philadelphia, Pa., Inc., 3 Cir., 116 F.2d 254; Schad et al. v. Twentieth Century-Fox Film Corp. et al., 3 Cir., 136 F.2d 991; Lukon v. Pennsylvania R. Co., 3 Cir., 131 F.2d 327; Meyonberg v. Pennsylvania R. Co., 3 Cir., 165 F.2d 50; Kraus v. Reading Co., 3 Cir., 167 F.2d 313; O'Brien v. Public Service Taxi Co., 3 Cir., 178 F.2d 211.

The court cannot concern itself with the credibility of the witnesses or the weight of the evidence. Roth v. Swanson, 8 Cir., 145 F.2d 262.

The court is not free to reweigh the evidence and set aside the jury's verdict merely because the jury could have drawn different inferences or conclusions, or because the court regards another result as more reasonable. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520.

Where uncertainty as to the existence of negligence arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720.

Campagna was engaged in the furtherance of his employment at the time that he met his death, and the absence of eye witnesses is not decisive as to the negligence of the defendant or his contributory negligence. There is testimony from which reasonable inferences can be drawn that Campagna met his death while engaged in the cleaning of a switch and where he was properly stationed to perform his duties.

To this evidence must be added the presumption that the deceased was actually engaged in the performance of his duties and exercised due care for his own safety at the time of the accident. Tennant v. Peoria & P. U. Ry. Co., supra.

Although the Federal Employers' Liability Act does not make a railroad an absolute insurer against injuries suffered by its employees, the question resolves itself into whether the employer's conduct measured up to what a reasonable and prudent person would have done under the same circumstances, bearing in mind that the standard of care must be commensurate to the danger of the business. Wilkerson v. McCarthy, 336 U.S. 53, 61, 69 S.Ct. 413; Myers v. Reading Co., 331 U.S. 477, 67 S. Ct. 1334, 91 L.Ed. 1615; Lavendar v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.

It was incumbent upon the plaintiff to prove that the defendant was negligent and that such negligence was the proximate cause, in whole or in part, of the fatal accident. Appropriate facts must exist from which the negligence and the defendant's relation could reasonably be inferred. If that requirement is met, the issue has been properly presented to the jury because no court is then justified in substituting its conclusions for those of the twelve jurors. Tennant v. Peoria & P. U. Ry. Co., supra.

Circumstantial evidence has probative value equal to that of testimonial evidence. Lukon v. Pennsylvania R. Co., supra.

The phrase "reasonable safe place to work" is a term of relative application. It does not mean the absolute elimination of all danger but the elimination of those dangers which could be removed by the exercise of reasonable care on part of the employer. Raudenbush v. Baltimore & O. R. Co., 3 Cir., 160 F.2d 363, 367.

No reason exists why within the confined area of a yard the employer should not be required to exercise a reasonable degree of care to provide the employees with a reasonably safe place to work in the performance of their various duties. The degree of care to be exercised must have some reasonable relationship to the ability of that party upon whom the duty is cast to perform such duty.

Proof was presented to show that under certain rules of the defendant company, which applied to the employees engaged in the shifting operation, a duty existed to give warning to the deceased.[1]

There is conflicting evidence as to whether the rules applied to the employees of the defendant who were engaged in the shifting operation, or if they appplied to the deceased in the type of work in which he was engaged.

This conflict, regardless of the belief of the trial judge as to whether they were applicable under the circumstances or not, in my judgment, resolved itself into a question for the jury's determination.

Where it is claimed that a servant, agent or employee of a railroad violates any rule, order or regulation, it is for the jury to state whether or not any violation existed and if it does exist, whether the violation was the proximate cause which

1. "119. Care must be exercised before placing cars on a track to avoid injury to persons in or about the cars on such track. Warning must be given to persons loading or unloading freight from cars before movement is made."

"124. If temporary changes or repairs to drawbars are necessary, employes making such repairs must have cars separated a sufficient distance so that if, under any possible conditions, misunderstanding as to signals, etc., occur, it will be possible to avoid injury.

"On yard tracks, notify engineer or post men at either end of train or such other action must be taken as will insure safety. Employes making repairs must never stand in the line of drawheads, when it is possible to do work otherwise.

"226. Engines or cars must not be moved without first notifying all persons who may be working under or about them, and without sounding whistle and ringing bell."

contributed in whole or in part to the accident.

■ A violation of company rules relative to safety for the conduct of its employees, general in terms, will not ordinarily constitute negligence as a matter of law, nor will observance of such rules as a matter of law necessarily be due care. It is for the jury's determination as to whether or not the violation or obeying of the rules along with the evidence as a whole constitutes negligence or lack of negligence. Atchison, T. & S. F. Ry. Co. v. Ballard, 5 Cir., 108 F.2d 768, certiorari denied 310 U.S. 646, 60 S.Ct. 1096, 84 L.Ed. 1413.

At first impression the case of Toledo, St. Louis & Western R. Co. v. Allen, 276 U.S. 165, 48 S.Ct. 215, 72 L.Ed. 513, seems to support the argument of the defendant that the motion for judgment notwithstanding the verdict should be granted. In that case the plaintiff worked in a switching yard and was struck by a car that was proceeding on its own momentum. At the place where the employee was working there was sufficient room to enable him to keep out of the way of moving cars. The accident occurred at night, the cars were being moved at four to six miles an hour, they were unlighted, unattended and no one warned the employee of their approach. He knew that switching was being done and there was nothing to show that the ordinary practice was departed from. The court held that the employee assumed the ordinary risks of his employment when obvious or fully known and appreciated. Since there was nothing to show that the plaintiff was in any danger other than such as was usually incident to his employment or that any member of the crew knew or had any reason to believe that he was oblivious of the situation, no right to recover existed. That in the absence of knowledge on the part of the employee of the defendant that the plaintiff was in a position where he was liable to be struck and oblivious of that danger, the defendant was not required to vary the switching practice customarily followed in that yard or to warn or to take other steps to protect it.

I believe this case can be distinguished from the facts which are involved in the instant action.

Although it is true that the deceased had been employed by the defendant for a number of years and was well aware or should have been aware of the shifting operation which occurred daily in the vicinity where he worked, the duties of the deceased were such that he followed his employment in many parts of the yard of the defendant company and he did not work on any particular switch at any definite hour or time of the day. The defendant knew or should have known that the two freight trains, which proceeded on the opposite track, would pass on the adjoining track to the shifting operation. The noise of the passing freight trains would unquestionably have interfered with the ability of the deceased to hear the approaching cars. It appears to me that under all these facts a question existed for the jury to determine whether or not the switching practice which was customarily followed in this particular area should have been varied or changed, and if the defendant should have provided some warning or notice to be given the deceased of the approach of the six cars.

■ The rule of law is sound which requires an employee working in and about a railroad yard to look out for his own safety. No duty is imposed as a matter of law on employees engaged in a switching operation to keep a lookout for an employee working in a busy terminal yard. Davidson et al. v. Gardner, 7 Cir., 172 F.2d 188; Sumney v. Southern Ry. Co. et al., 4 Cir., 89 F.2d 437; Trust Co. of Chicago v. Erie R. Co., 7 Cir., 165 F.2d 806, certiorari denied, 334 U.S. 845, 68 S.Ct. 1513, 92 L.Ed. 1769; Aerkfetz v. Humphreys, 145 U.S. 418, 12 S.Ct. 835, 36 L.Ed. 758.

■ Since the 1939 amendment to the Federal Employers' Liability Act, assumption of risk is no longer a defense and whether or not an employee's negligence contributes to his own injury or death is a question for the determination of the jury. If such negligence exists, the damages to be allowed should be proportioned between the

828

employee and his employer according to their respective fractions of total negligence. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Keith v. Wheeling & L. E. Ry. Co., 6 Cir., 160 F.2d 654; Chicago, St. P., M. & O. R. Co. v. Arnold, 8 Cir., 160 F.2d 1002.

■ The field of jury's inferences with respect to negligence and proximate cause under the Federal Employers' Liability Act is a broad one and only requires a rational possibility on the facts, and a verdict is not necessarily one of speculation and conjecture because inferences are arrived at by application of general experience and common reaction to evidentiary situations. Henwood v. Coburn, 8 Cir., 165 F.2d 418.

■ Although a railroad has no duty under the Federal Employers' Liability Act to keep a look-out or give signals to employees in railroad yards, in view of the passing of the two freight trains at the point where the deceased was working during the shifting operation if the railroad had maintained a look-out and had been in a position to give a signal or warning of the approach of the six cars, the accident would not have occurred.

The choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth, the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury. If there is a reasonable basis in the record for concluding that there was negligence of the employer which caused the injury, it would be an invasion of the jury's function for the trial judge to draw contrary inferences or to conclude that a different conclusion would have been more reasonable. Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572.

The question of the defendant's negligence and the deceased's contributory negligence was therefore necessarily for the jury, and it appears to me proper that the motion for a directed verdict and for judgment n. o. v. should be denied.

An appropriate Order is filed.